**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
ROY DEN HOLLANDER,

        Plaintiff,

        -against-

PRESSREADER, Inc.
(formerly NEWSPAPERDIRECT, INC.,
NY DOS ID 2390795)

        Defendant.
------------------------------------------------------------------X

Civil Action No. 19-CV-02130

**Jury Trial Requested**

**FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a)(1)(B) IN THE S.D.N.Y.**

    Plaintiff Roy Den Hollander, a sole practitioner attorney with an international law and business consulting practice, here representing himself, brings (1) a claim against Defendant PressReader, Inc. ("PressReader") for violating Plaintiff's right to publicity under New York State Civil Rights Law §§ 50 & 51 by publishing an article using Plaintiff's name without his consent (Ex. A); (2) a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.*, ("RICO") for engaging in wire fraud, 18 U.S.C. 1343, that injured Plaintiff's businesses; (3) a claim for defamation under New York State law; (4) a claim for injurious falsehood under New York State law; and (5) a claim for negligence under New York State law.

    Plaintiff alleges as follows:

## VENUE

1. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to the claims against PressReader occurred and are occurring in this forum.

2. Venue is proper in this Court under 18 U.S.C. 1965(a) because Defendant PressReader transacts affairs in this district.

## SUBJECT MATTER JURISDICTION--DIVERSITY

3. Plaintiff requests damages in the amount of $100,000 under the right to publicity claim; an amount of $100,000 under the RICO claim, which when tripled is $300,000; an amount of $100,000 under the defamation claim; an amount of $100,000 under the injurious falsehood claim; and an amount of $100,000 under the negligence claim; plus expenses and costs.

4. Plaintiff also requests punitive damages in the amount of $1 million.

5. Plaintiff's residence is 545 East 14th Street, New York, N.Y. and Defendant PressReaders' home office is 200 – 13111 Vanier Place, Richmond, BC, V6V 2J1, Canada.

## PERSONAL JURISDICTION OVER DEFENDANT

6. This Court has personal jurisdiction over Defendant PressReader under Fed. R. Civ. P. 4(k)(1)(A) because PressReader is subject to personal jurisdiction in the New York State courts and has minimum contacts with the State.

7. PressReader previously operated as "NewspaperDirect, Inc." (http://www.newspaperdirect.com, last visited October 11, 2018).  NewspaperDirect, Inc. was a foreign corporation authorized to do business in New York State by the Secretary of State but on July 16, 2018, surrendered that authority.  (Ex. B).

8. The events complained of in this action took place before July 16, 2018.

## THE PARTIES

Plaintiff Roy Den Hollander

9. Plaintiff, Roy Den Hollander, is admitted to practice law in the courts of the State of New

York, U.S. District Courts for the Southern and Eastern Districts of New York, and the U.S. Court of Appeals for the Second Circuit.

10. Since 2008, Plaintiff has specialized in equal rights litigation that opposes preferential treatment for males and females, and his business consultancy has provided advice on that issue.

11. Plaintiff's legal practice and business consultancy also involve various other matters with clients both domestic and international.

12. Plaintiff has received attention from news reporters to the extent that he may have become a public figure in the ongoing culture wars, which is a decision for this Court to make.

13. Included in that attention are the following articles: Tory Shepherd, *Freedom of religion cannot trump other rights*, The Advertiser, April 3, 2018; Amy McNeilage, *University of South Australia distances itself from males studies proposals*, The Sydney Morning Herald, January 14, 2014; Tory Shepherd, *University of South Australia gives controversial Male Studies course the snip*, The Advertiser-Sunday Mail Messenger, January, 14, 2014; Tory Shepherd, *Pathetic bid for victimhood by portraying women as villains*, The Advertiser-Sunday Mail Messenger, January 14, 2014; Tory Shepherd, *LECTURERS in a 'world-first' male studies course at the University of South Australia under scrutiny*, The Advertiser-Sunday Mail Messenger, January 12, 2014.

14. Plaintiff has received commercially beneficial publicity from the news media, which results in attracting clients to his law practice and business consultancy.

15. The use of Plaintiff's name as a lawyer and business consultant, therefore, has commercial value.

Defendant PressReader, Inc.

16. PressReader is a digital newspaper and magazine distribution and publishing company with headquarters in Vancouver, Canada (https://about.pressreader.com, last visited October 11, 2018) and offices in Dublin, Ireland and Manila, Philippines.

17. PressReader has contracted with thousands of newspaper and magazine publishers and their reporters across the globe, including in New York State and New York City, to market, sell and print the articles by those reporters around the world by way of the Internet and mobile telephone apps.

18. PressReader uses a platform that allows people to read, share and talk about stories from over 7,000 publications and their reporters.  (https://about.pressreader.com, last visited October 11, 2018).  PressReader has seven (7) million monthly active users worldwide, including many in New York State (http://media.pressreader.com/2017/11/17/pressreader-opens-european-headquarters-dublin, last visited October 11, 2018) and New York City, which is the headquarters for Plaintiff's law practice and business consultancy.

19. PressReader contracted with the N.Y. Public Library to provide its services to library customers.  (https://www.nypl.org/collections/articles-databases/pressreader, last visited October 11, 2018).

20. PressReader contracted with the N.Y. Daily News to carry that newspaper on its platform.  (https://www.pressreader.com/usa/new-york-daily-news/textview, last visited October 11, 2018).

21. PressReader contracted with the N.Y. Post to carry that newspaper on its platform. (nypost.newspaperdirect.com/epaper/Interstitial.aspx, last visited October 11, 2018).

22. PressReader contracted with The New York Times to carry that newspaper on its platform. (https://goodereader.com/blog/electronic-readers/the-new-york-times-now-on-pressreader, last visited October 11, 2018).

23. PressReader also has a contract under which it publishes articles by Tory Shepherd, an Australian reporter.

24. In April 2018, PressReader published through its online and mobile apps platforms the April 4, 2018, article *Misplaced fear of gay revenge*, written by Tory Shepherd. (Ex. A).

25. In 2014, PressReader published through its online and mobile apps platforms the article *Collision Course* by Tory Shepherd, which is still available through PressReader. (Ex. C).

26. At the time of both publications, PressReader was operating as NewspaperDirect, Inc., and was authorized to do business in New York State. (*See* Ex. B).

## FIRST CLAIM FOR RELIEF

*Right of Privacy under Article 5 of the N.Y. Civil Rights Law §§ 50 & 51*

27. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

28. N.Y. Civil Rights Law § 50 makes a right of publicity violation a misdemeanor:

> A person, firm or corporation that uses . . . for the purposes of trade, the name . . . of any living person without having first obtained the written consent of such person . . . is guilty of a misdemeanor.

29. N.Y. Civil Rights Law § 51 provides a private cause of action for protecting the unauthorized use of a person's name:

> Any person whose name . . . is used within this state . . . for the purposes of trade without the written consent first obtained as above provided [in section 50] . . . may also sue and recover damages for any injuries sustained by reason of such use . . . .

30. Courts give these statutes a liberal construction consistent with the beneficial and remedial purposes of sections 50 and 51.

31. Violation of Civil Rights Law § 51 requires the use of a person's identity, such as his name, within New York State, for trade purposes, and without written consent.

32. Civil Rights Law § 51 applies in cases where a plaintiff uses his name for commercial purposes but has not given his written consent for a particular use.

33. PressReader published the article *Misplaced fear of gay revenge* (Ex. A) in New York State by way of the Internet and mobile apps.

34. The lead sentence of the 2018 article states, "Self-described 'anti-feminist lawyer' Roy Den Hollander once likened the position of men in society to black people in 1950s America 'sitting in the back of the bus.'"  (Ex. A).

35. PressReader's use of Plaintiff's name was without his permission, as was Tory Shepherd's use of his name.

36. Except for the first sentence, the article dealt with submissions by Australians to an Australian Federal Government panel concerning the Australian Government's review of religious freedom in Australia.

37. In 2017, the Australian Federal Parliament passed the marriage equality act that allowed two people, regardless of sex, to marry.

38. The Australian Federal Government also appointed a panel to receive submissions on the conflict between gay rights and religious freedom in Australia.

39. Plaintiff does not live in Australia, has never lived in Australia, has never visited Australia, did not submit any comments to the Australian panel and has never been involved in a case dealing with gay rights versus religious freedom—anywhere.

40. The publication of Plaintiff's full legal name in the very first sentence of the article, which virtually all readers of any article view before deciding to read further, was clearly

intended to exploit the notoriety of Plaintiff's name in order to deceive viewers into believing the article was about Plaintiff and Feminism so that they would read the remainder of the article.

41. Plaintiff neither provided written nor oral consent to either PressReader or Tory Shepherd.

42. PressReader basically stole the economic value of Plaintiff's name to further the services it provides.

43. PressReader published the article as part of its commercial business operation and Tory Shepherd wrote the article with the intent to have PressReader publish it pursuant to the PressReader contract that applies to Shepherd.

44. The PressReader published article does <u>not</u> fall within the public interest exception to Civil Rights Law § 51 because Plaintiff has no relationship whatsoever to the substance of the article concerning the conflict in Australia between religious freedom and gay rights.

45. As such, PressReader's use of Plaintiff's name was for a commercially exploitive aim rather than for the purpose of informing the public about a newsworthy or public interest situation.

46. The use of Plaintiff's name has financial value that PressReader seized for itself without consent; thereby, depriving Plaintiff of the income associated with the licensing of his name.

47. The right of publicity is proprietary in nature, so Plaintiff requests compensatory damages in the amount of $100,000 for harm to Plaintiff's economic interests that were affected by the wrongful exploitation of his name by PressReader.

48. Plaintiff also requests punitive damages in the amount of $250,000 for PressReader acting knowingly or with reckless disregard in violation of the statute.

## SECOND CLAIM FOR RELIEF

*Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., by engaging in wire fraud, 18 U.S.C. 1343.*

49. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

50. Section 1964 of RICO has a number of requirements that are listed below along with how they apply to this case against PressReader.

### The Enterprise

51. An Enterprise can be a legal entity, such as a corporation, or a group of persons who associate together for a common purpose of engaging in a course of conduct and that affect interstate or foreign commerce.

52. PressReader and Tory Shepherd via a contract associate together for the purpose of publishing her articles to PressReader's subscribers around the globe by way of international commerce.

### Pattern of Racketeering Activity and Predicate Acts

53. A Pattern of Racketeering Activity requires that a defendant commit two or more "predicate acts" (also called racketeering activities) that are related and connected in time.

54. Here the two "predicate acts" by PressReader are two instances of wire fraud in publishing two articles by Shepherd, including the *Misplaced fear of gay revenge*. (Exs. A and C).

*Wire fraud predicate act*

55. Wire fraud under 18 U.S.C. § 1343 requires a scheme or artifice to defraud by means of false pretenses, representations or promises (scheme includes half-truths, concealment of material facts, and deceit); causing such misrepresentations to be transmitted or making a communication in furtherance of the scheme by wire, radio or television communication in

interstate or foreign commerce; and intentionally devising, participating in, or abetting such a scheme, which is inferred by a person's pattern of conduct and the nature of the scheme.

56. The purpose of the wire fraud statute is to protect businesses and property.

57. Plaintiff has two businesses, a law practice and business consultancy, with property interests in both. (Ex. D).

58. The Enterprise scheme in publishing world-wide the two articles was to harm Plaintiff's legal practice and business consultancy because Plaintiff is considered an enemy of the Enterprise in the ongoing culture wars—he doesn't believe as they do.

59. The Enterprise scheme was to deceive the public about the nature and objectives of Plaintiff's law practice and business consultancy; thereby, causing his businesses financial harm.

60. The Enterprise created and published the 2018 article that falsely depicted Plaintiff's law and business practices as that of "traditional oppressors" furthering the oppression of women, gays and minorities; as identical with the pigs in George Orwell's <u>Animal Farm</u> declaring their superiority over others; as typical of "despot[s]"; as bilious; as advocating doctors to violate their profession's ethics; as "right off the rails"; as opposed to same-sex marriages; and as furthering fear mongering.

61. The Enterprise created and continues to publish the 2014 article (Ex. C) that falsely depicted Plaintiff's law practice and business consultancy as advocating "extreme views on men's rights"; as supporting "websites that rail against feminism" that "regularly refer to women as 'bitches' and 'whores' and one website "has been described as a hate site by the civil rights organisation (sic) Southern Poverty Law Centre"; as advocating violence; as advocating the burning of women at the stake; as being part of the lunatic fringe "margins"; and as being "anathema to the vision of an equal and fair" treatment for all.

9

*Two or more predicate acts of wire fraud*

62. The RICO pattern of racketeering activity requires the commission of at least two predicate acts, which here are the Enterprise creating and publishing over the wires two articles (Exs. A and C) that falsely depict Plaintiff's businesses in an effort to financially harm them.

*Predicate acts are related.*

63. "Predicate acts" are considered related under RICO when they have the same purpose, participants, targets and method of commission.

64. Here the purpose (harm Plaintiff's businesses), participants (PressReader and Tory Shepherd), target (Roy Den Hollander's businesses) and method of commission (Internet and mobile apps) of the wire frauds are the same for each predicate act.

The Prohibited RICO 18 U.S.C. § 1962(c) Activity

65. 18 U.S.C. § 1962(c) states the conduct under RICO that is illegal:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

66. To violate RICO, a defendant is required to play some part in conducting, participating or directing the affairs of the Enterprise in which it functions. Here, PressReader publishes over the wires the false, prevaricating and dissembling articles that Shepherd writes.

67. Plaintiff seeks RICO damages in the amount of $100,000, which when tripled will amount to $300,000.

THIRD CLAIM FOR RELIEF

*Defamation*

68. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

69. In analyzing the words for their defamatory meaning, the publication as a whole is considered.

70. The PressReader article *Misplaced fear of gay revenge* used Plaintiff's full legal name in the lead sentence so as to depict him as an example of "traditional oppressors," opponents to "same-sex marriages," a power hungry "pig[s]" similar to Napoleon in George Orwell's <u>Animal Farm</u>, one whose position on gay rights versus religious freedom is "bile," a supporter of churchgoers who " 'offer help to those struggling with unwanted temptation to commit homosexual sin'," one who is "opposed to abortion," a person whose views are "right off the rails," and one who wants "to discriminate against gay people." (Ex. A).

71. Each and every one of those descriptions referencing Plaintiff is false.

72. The article even admits that it is not "tarring" everybody just those it references, and the only person referenced by name is Plaintiff.

73. If this Court concludes that Plaintiff is a public figure, then it is alleged that PressReader knew the statements were false or suspected they were false but went ahead and published the article anyway.

74. If this Court concludes that Plaintiff, as PressReaders' attorney argues, is a private person, then by PressReader choosing to thrust Plaintiff into the Australian dispute between gay rights and religious freedom, PressReader acted with "gross irresponsibility." *See Chapadeau v. Utica Observer-Dispatch*, 38 N.Y.2d 196, 199 (1975).

75. PressReader is no mere conduit of information but exercises editorial control over that which it publishes.

76. The statements published by PressReader are *pre se* defamatory in that they injured Plaintiff in his occupation and businesses as an attorney and business consultant. (Ex. D).

11

77. Plaintiff requests damages in the amount $100,000 for PressReader's defamation and punitive damages of $250,000.

## FOURTH CLAIM FOR RELIEF

*Injurious falsehood under New York State law to Plaintiff's businesses*

78. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

79. PressReader knowingly or with reckless disregard published the false statements and false factual connotations (*see above* ¶¶ 60, 70) about Plaintiff that reflected on Plaintiff's businesses because the legal title to Plaintiff's businesses are his given name and Plaintiff businesses are sole proprietorships.

80. If PressReader in publishing the article *Misplaced fear of gay revenge* did not know the article's disparaging statements were false, or it was not motivated by ill will, or did not publish the statements with the intent to interfere with Plaintiff's businesses; it clearly made them with reckless disregard as to their truth or falsity, without regard to the consequences, and under circumstances where a reasonably prudent person would have anticipated that injury to another's sole proprietorship businesses would follow.

81. PressReader did or should have anticipated the harm caused by publishing the false statements that caused opportunity losses to Plaintiff's businesses and expense required to mitigate the economic damage from the publication, such as the current lawsuit.

82. Plaintiff requests damages of $100,000 and punitive damages in the amount of $250,000.

## FIFTH CLAIM FOR RELIEF

*Negligence under New York State law*

83. As a publisher to millions of people around the world, PressReader clearly has a duty to the individuals named in its publications.

> [W]henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.

*Heavan v. Prender*, 11 Q.B.D. 503, 509 (1883) (quoted in *Havas v. Victory Paper Stock Co., Inc.*, 49 N.Y.2d 381, 386(1980)).

84. PressReader is a global publisher of news media articles; it possesses superior skill and knowledge as compared to the man in the street. The reasonableness of its conduct, therefore, is determined by the objective point of view of the fictional prudent person possessing the same skills of the defendant's trade, profession or training.

85. PressReader failed to exercise the basic requirement of news publication—check the accuracy of the article as to its representations and inferences.

86. PressReader failed to employ the reasonable care required of a skilled organization, the care which a reasonably prudent publication should use when publishing an article on a controversial issue that depicts a person by name as a modern day pariah written by a reporter who has made it a habit of personally attacking that person.

87. An article by Tory Shepherd in which she uses Plaintiff's name and identifies him with numerous false statements made it foreseeable to PressReader that publication of the article would harm Plaintiff.

88. PressReader's breach of its duty of care harmed Plaintiff and his businesses.

89. Plaintiff requests damages of $100,000 and punitive damages in the amount of $250,000.

## CONCLUSION

90. Just because PressReader is a global media company does not give it the right to violate the rights of an individual with impunity, or try to further punish that individual for resorting to the courts to defend his rights.

Dated:  March 29, 2019　　　　　　　　　　　　Respectfully submitted,
　　　　　New York, N.Y.

　　　　　　　　　　　　　　　　　　　　　　　s/Roy Den Hollander
　　　　　　　　　　　　　　　　　　　　　　　Roy Den Hollander, Esq.
　　　　　　　　　　　　　　　　　　　　　　　Plaintiff and Attorney
　　　　　　　　　　　　　　　　　　　　　　　545 East 14th Street, 10D
　　　　　　　　　　　　　　　　　　　　　　　New York, N.Y. 10009
　　　　　　　　　　　　　　　　　　　　　　　(917) 687-0652
　　　　　　　　　　　　　　　　　　　　　　　roy17den@gmail.com