USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Roy Den Hollander,

                    Plaintiff,

          –v–                                                19-cv-2130 (AJN)

Pressreader, Inc.,                                           OPINION & ORDER

                    Defendant.

ALISON J. NATHAN, District Judge:

        Plaintiff Roy Den Hollander, an attorney proceeding *pro se*, brings this suit against

Pressreader, Inc., a digital newspaper and magazine distribution and publishing company,

alleging that Pressreader's publication of two articles that "falsely depict" Hollander's law

practice and business consultancy violates his right to publicity under New York Civil Rights

Law §§ 50 and 51 and constitutes predicate acts of wire fraud supporting a civil claim of

racketeering under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C.

§ 1964(c).  Before the Court are Pressreader's motion to dismiss the First Amended Complaint

for failure to state a claim upon which relief can be granted and Hollander's motion for leave to

amend the First Amended Complaint, as well as two sanctions motions filed by Hollander.  For

the reasons that follow, Pressreader's motion to dismiss is GRANTED, and Hollander's motion

for leave to amend and sanctions motions are DENIED.  The denial of Hollander's motion for

leave to amend is without prejudice.

1

I.      BACKGROUND[1]

Roy Den Hollander is an attorney who specializes in "equal rights litigation that opposes preferential treatment for males and females."  First Am. Compl. (Dkt. No. 1-3) ¶¶ 6–7.  He has a legal practice and a business consultancy that focus on this and various other issues.  *Id.* ¶ 8. Due to his status as a "public figure in the ongoing cultural wars," he has been the subject of significant media attention.  *Id.* ¶ 9.

In 2014 and again in 2018, Pressreader—a digital newspaper and magazine distribution and publishing company that has contracts with thousands of newspaper and magazine publishers and their reporters to publish their articles—published articles by journalist Tory Shepherd, an Australian journalist with whom Pressreader has a contract.  *Id.* ¶¶ 13–14, 20–22. These articles both reference Hollander.  Specifically, on January 13, 2014, Pressreader published through its online and mobile app platforms an article by Shepherd entitled "Collision Course," which discusses a male studies course offered at a university in Australia.  *Id.* ¶ 22. This article describes Hollander as a "self-professed 'anti-feminist lawyer'" who "has written that the men's movement might struggle to exercise influence but . . . 'there is one remaining source of power in which men still have a near monopoly—firearms.'"  Dkt. No. 1-3 at 18.  The article also notes that Hollander "has tried to sue ladies' nights for discrimination against men," "has likened the position of men today to black people in America's south in the 1950s 'sitting in the back of the bus,'" and "blames feminists for oppressing men."  *Id.*  In April 2018, Pressreader published another article by Shepherd through its online and mobile app platforms entitled "Misplaced fear of gay revenge," which discusses tensions between LGBTQ rights and

---

[1] The following facts are drawn from Hollander's First Amended Complaint (Dkt. No. 1-3) and are assumed to be true for purposes of Pressreader's motion to dismiss.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

religious liberty.  First Am. Compl. ¶ 21.  This article again describes Hollander as a "[s]elf-described 'anti-feminist lawyer'" who "once likened the position of men in society to black people in 1950s America 'sitting in the back of the bus.'"  *Id.* ¶ 31; *see also* Dkt. No. 1-3 at 14.

On October 15, 2018, Hollander brought suit against Pressreader in the Civil Court of the City of New York, alleging that its publication of the April 2018 article violated his right to publicity under New York Civil Rights Law §§ 50 and 51.  *See* Dkt. No. 1-1.  On February 7, 2019, Hollander filed the First Amended Complaint, asserting, for the first time, a claim for relief under civil RICO in addition to his New York Civil Rights Law claim.  *See generally* First Am. Compl.  Hollander's civil RICO claim is premised on allegations that Pressreader engaged in acts of wire fraud, constituting RICO predicate acts, by publishing the January 2014 and April 2018 articles, which, he alleges, "deceive the public about the nature and objectives of [his] law practice and business consultancy."  *Id.* ¶¶ 50–55.  Hollander seeks money damages in the amount of $21,000 for these alleged violations of the New York Civil Rights Law and the civil RICO statute.  *See id.* ¶ 2.

On March 7, 2019, Pressreader filed a notice of removal of this action to federal court, asserting that this Court has federal question jurisdiction over the civil RICO claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the New York Civil Rights Law claim pursuant to 28 U.S.C. § 1367.  *See* Dkt. No. 1 ¶¶ 11–12.

After this case was removed to this Court, Hollander attempted to amend his pleading again by filing a "First Amended Complaint Pursuant to Fed. R. Civ. P. 15(a)(1)(B) in the S.D.N.Y." on the public docket.  *See* Dkt. No. 13.  In an Order issued on April 3, 2019, Judge Moses, the Magistrate Judge assigned to this action, advised Hollander that because he had already amended his pleading once in state court, he could not amend again "as a matter of

course" under Rule 15(a)(1) of the Federal Rules of Civil Procedure.  *See* Dkt. No. 15 at 1–2.

She then instructed Hollander to file any motion for leave to amend pursuant to Rule 15(a)(2) by

April 12, 2019.  *See id.* at 2.  On April 12, 2019, Hollander moved for leave to file a Second

Amended Complaint, adding three new claims under New York State law: defamation, injurious

falsehood, and negligence.  *See* Dkt. Nos. 17, 17-2.

　　　After Pressreader expressed its intent to move to dismiss the First Amended Complaint,

Judge Moses ordered that it file its motion to dismiss accompanied by a single memorandum of

law in support of that motion and in opposition to Hollander's motion to amend.  On April 30,

2019, Pressreader filed its motion to dismiss accompanied by such a memorandum of law.  *See*

Dkt. Nos. 27, 28.  On May 14, 2019, Hollander filed a memorandum of law in opposition to

Pressreader's motion to dismiss and in further support of his motion to amend, *see* Dkt. No. 33,

and on May 21, 2019, Pressreader filed its reply memorandum of law in further support of its

motion to dismiss, Dkt. No. 34.

## II.　　MOTION TO DISMISS

### A.  Legal Standard

　　　In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the

allegations in the complaint as true and draws all reasonable inferences in favor of the non-

moving party.  *McCarthy*, 482 F.3d at 191.  Additionally, courts must "liberally construe

pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest

arguments they suggest."  *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir.

2017) (internal quotation marks omitted).

　　　To survive a motion to dismiss, the complaint must include "enough facts to state a claim

to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  In other words, "the complaint's factual allegations must be

enough to raise a right to relief above the speculative level, i.e., enough to make the claim

plausible." *Arista Records, LLC, v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*,

550 U.S. at 555) (internal citations and alterations omitted).  "Threadbare recital of the elements

of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S.

at 678.

Generally, "the facts alleged in the complaint, documents attached to the complaint as

exhibits, and documents incorporated by reference in the complaint" may be considered in

assessing whether a claim is sufficient to survive a Rule 12(b)(6) motion.  *DiFolco v. MSNBC*

*Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

### B.  Pressreader's Motion to Dismiss is Granted

#### 1. Civil RICO Claim Fails as a Matter of Law

The First Amended Complaint asserts only one claim for relief under federal law, a civil

RICO violation based on Pressreader's publication of the January 2014 and April 2018 articles

discussed above.  *See* 18 U.S.C. § 1964(c).  Pressreader argues that Hollander's civil RICO claim

must be dismissed because it violates the First Amendment and otherwise fails to state a claim

upon which relief can be granted.  The Court agrees.

Hollander's civil RICO claim takes aim at constitutionally protected speech.  Indeed,

Hollander alleges in his First Amended Complaint that Pressreader's publishing, on two separate

occasions, of the allegedly "false, prevaricating and dissembling articles that Shepherd writes"

constitutes predicate acts of wire fraud supporting a civil claim of racketeering.  First Am.

Compl. ¶¶ 50, 62.  However, the speech for which Hollander seeks relief—articles discussing

university curricula and LGBTQ rights—touches on "matters of public concern" and thus lies "at

the heart of the First Amendment's protection."  *Snyder v. Phelps*, 562 U.S. 443, 451–52 (2011)

(quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758–759 (1985)).

Such speech "occupies the highest rung of the hierarchy of First Amendment values, and is

entitled to special protection."  *Id.* at 452 (quoting *Connick v. Myers*, 461 U.S. 138, 145 (1983)).

On prior occasions, the Supreme Court has found that this special protection shields defendants

from tort liability, *see Snyder*, 562 U.S. at 461, and another court in this District has concluded—

in a factually-similar suit brought by Hollander himself—that "the news reporting that Hollander

assails as wire fraud is speech protected by the First Amendment of the United States

Constitution for which civil damages to an offended audience are not available," *Hollander v.

CBS News Inc.*, No. 16-cv-6624 (PAE), 2017 WL 1957485, at *1 (S.D.N.Y. May 10,

2017), *vacated on other grounds sub nom. Hollander v. Garrett*, 710 F. App'x 35 (2d Cir. 2018).

    The special protection accorded matters of public concern is, of course, not absolute, *see,

e.g.*, *Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612 (2003) (holding

that the First Amendment does not shield fraudulent charitable solicitations); indeed, in some

limited contexts, "speech touching on matters of public concern may potentially be actionable,"

see *Hollander*, 2017 WL 1957485, at *3 (describing contexts, including where speech is integral

to a criminal scheme, in which protected speech may be actionable).  Hollander argues that the

First Amendment *does not* shield Pressreader from liability here because the speech at issue is

"integral to the commission of a crime."  *See* Dkt. No. 33 at 11.  However, Hollander's First

Amendment argument fails for the same reason his civil RICO claim does: namely that the First

Amended Complaint *fails to adequately allege* that the speech at issue is integral to the

commission of any crime.

Indeed, even if Hollander's civil RICO claim were not barred by the First Amendment, it

would still fail to state a claim.  Under 18 U.S.C. § 1962(c), it is "unlawful for any person

employed by or associated with any enterprise engaged in, or the activities of which affect,

interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of

such enterprise's affairs through a pattern of racketeering activity."

In order to state a civil RICO claim, a plaintiff must allege:

> (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or
> property; and (3) that the injury was caused by the violation of Section 1962.  To
> [allege] a violation of § 1962(c), in turn, a plaintiff must [allege] that a person
> engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of
> racketeering activity.

*Cruz v. FXDirectDealer, LLC,* 720 F.3d 115, 120 (2d Cir. 2013) (citation, footnote, and internal

quotation marks omitted).  The statute defines "racketeering activity" through a long list of

criminal offenses in turn defined by state and federal law.  *See* 18 U.S.C. § 1961(1).  That list

includes the offense alleged in the First Amended Complaint: wire fraud under 18 U.S.C. § 1343.

*Id.*; *see* First Am. Compl. ¶ 50.

The First Amended Complaint fails to state a civil RICO claim because it does not allege

any predicate acts that constitute racketeering activity, as is required to allege a violation of

§ 1962(c).[2]  Hollander alleges that the two predicate acts, or racketeering activities, are "two

instances of wire fraud in [Pressreader's] publishing" the January 2014 and April 2018 articles

by Shepherd.  *See* Dkt. No. 1-3 ¶ 50.  "The essential elements of [wire fraud] are (1) a scheme to

---

[2] Because the Court concludes that Hollander has failed to allege any predicate acts that constitute racketeering
activity, it does not consider Pressreader's additional arguments regarding Hollander's civil RICO claim.  *See* Dkt.
No. 28 at 11–16.

defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to

further the scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (quoting *United*

*States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)).  Perhaps the most glaring defect—among

many—in Hollander's wire fraud allegations is his failure to allege any money or property that

was the object of the alleged wire fraud scheme.  He alleges that the scheme was designed to

"harm [his] legal practice and business consultancy" by "deceiv[ing] the public about the nature

and objectives of [his] law practice and business consultancy," thereby "causing his businesses

financial harm."  First Am. Compl. ¶¶ 54–55.  However, these allegations amount to little more

than an "attempt to spin an alleged scheme to harm a plaintiff's professional reputation into a

RICO claim."  *Kimm v. Lee*, No. 04-cv-5724 (HB), 2005 WL 89386, at *4 (S.D.N.Y. Jan. 13,

2005), *aff'd sub nom. Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14 (2d Cir. 2006).

This attempt founders, because injury to one's professional reputation, standing alone, is not

"actionable harm under the mail or wire fraud statutes," *id.* at 5; indeed, such an injury is "not

based on an injury to what has commonly been known as 'property,'" *id.* (quoting *United States*

*v. Ferrara,* 701 F. Supp. 39, 43 (E.D.N.Y. 1988), *aff'd,* 868 F.2d 1268 (2d Cir. 1988)).

        At bottom, Hollander's wire fraud allegations "are—at best—thinly clothed defamation

claims."  *Id.*  And "it is firmly established that defamation and many other similar allegations do

not provide the requisite predicate for RICO violations."  *Id.* (collecting cases); *see also* 18

U.S.C. § 1961.  The Court thus concludes that while Hollander "labels these acts of journalism as

acts of 'wire fraud,' in fact, he pleads no 'scheme or artifice to defraud, or for obtaining money

or property by means of false or fraudulent pretenses, representations, or promises.'"  *Hollander*,

2017 WL 1957485, at *4.  Because Hollander has failed to plead any predicate act supporting his civil RICO claim, this claim must be dismissed.

### 2. New York Civil Rights Law Claim Fails as a Matter of Law

The First Amended Complaint also asserts a claim for a violation of Hollander's right to publicity under New York Civil Rights Law §§ 50 and 51.  Pressreader argues that this claim fails as a matter of law because the April 2018 article that is the subject of this claims falls within the "newsworthiness" or "public interest" exception to the relevant statutory provisions.  The Court again agrees.

To state a right of publicity claim in New York under New York Civil Rights Law §§ 50 and 51, "the plaintiff must prove that the defendant '[i] used his name, portrait, picture, or voice, [ii] for advertising or trade purposes, [iii] without his written consent.'"  *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 205 (S.D.N.Y. 2015) (quoting *Burck v. Mars, Inc.*, 571 F. Supp. 2d 446, 455 (S.D.N.Y. 2008)).  These sections are "limited in their reach because of the First Amendment," *Burck*, 571 F. Supp. 2d at 451, and do not apply to "reports of newsworthy events or matters of public interest," *Messenger v. Gruner + Jahr Printing & Publ'g,* 94 N.Y.2d 436, 441 (2000).  This so-called newsworthiness exception should be "liberally applied," and "judicial intervention should occur only in those instances where there is 'no real relationship' between a [a plaintiff's name] and an article or where the article is an 'advertisement in disguise.'"  *Finger v. Omni Publications Int'l, Ltd.*, 77 N.Y.2d 138, 143 (1990) (quoting *Murray v. New York Magazine Co.*, 27 N.Y.2d 406, 409 (1971)).

The Court concludes, as a matter of law, that Hollander cannot state a claim for violation of his right to publicity because §§ 50 and 51 of the New York Civil Rights Law are inapplicable here.  The April 2018 news article that is the subject of this claim clearly comes within the ambit of the newsworthiness exception, which the New York Court of Appeals instructs should be

applied liberally by this Court.  *See* Dkt. No. 1-3 at 14–15.  Moreover, the Court cannot say that

there is no "no real relationship" between Hollander's name and the April 2018 article, such that

the newsworthiness exception does not apply.  *Id.*  To the contrary, Hollander's name is used in

the article in reference to a belief attributed to him— that "the position of men in society" could

be compared "to black people in 1950s America 'sitting in the back of the bus,'" *id.* at 14—and

that belief is, in turn, used as illustrative of a general principle discussed throughout the article—

the idea that "traditional oppressors believ[e] they have become oppressed," *id.*  Accordingly,

because the Court concludes that the "newsworthiness" exception applies to the April 2018

article that is the subject of Hollander's right of publicity claim, that claim must be dismissed.

Because both the civil RICO and New York Civil Rights Law claims fail to state a claim

upon which relief can be granted, the Court GRANTS Pressreader's motion to dismiss the First

Amended Complaint.

## III.    MOTION TO AMEND

Having determined that Hollander's First Amended Complaint should be dismissed in its

entirety, the Court next considers Hollander's motion for leave to amend his First Amended

Complaint.  *See* Dkt. No. 17.

### A.  Legal Standard

District courts "ha[ve] broad discretion in determining whether to grant leave to amend."

*Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).  Generally, leave to amend should be

freely given when justice so requires, *see* Fed R. Civ. P. 15(a)(2), and "[a] pro se complaint

should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a

liberal reading of the complaint gives any indication that a valid claim might be stated," *Grullon*

*v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks omitted)

(quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)).  Conversely, the Court "need

not grant leave to amend" where "there is no indication that a valid claim might be stated after a

liberal reading of a pro se plaintiff's complaint."  *White v. Wells Fargo Bank, N.A.*, 2019 WL

3334533, at *9 (D. Conn. July 25, 2019) (emphasis added); *see also Ruffolo v. Oppenheimer &

Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Indeed, "'[w]here it appears that granting leave to amend

is unlikely to be productive'" because "the proposed amendment is futile," it is not an abuse of

discretion to deny leave to amend.  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d

Cir. 2002) (citation omitted).  "[Parties] opposing a motion to amend . . . bear[ ] the burden of

establishing that an amendment would be futile."  *Bonsey v. Kates*, No. 13-cv-2708 (RWS), 2013

WL 4494678, at *8 (S.D.N.Y. Aug. 21, 2013) (citing *Blaskiewicz v. Cty. of Suffolk*, 29 F. Supp.

2d 134, 137–38 (E.D.N.Y. 1998)).

### B.  Hollander's Motion to Amend is Denied

The Court denies Hollander's motion for leave to amend because Pressreader has

established that any amendment would be futile.  With respect to the civil RICO and right to

publicity claims, even a liberal reading of the proposed Second Amended Complaint makes clear

that it suffers from the same deficiencies the First Amended Complaint does.  Indeed, the

proposed Second Amended Complaint, which Hollander appends to his motion for leave to

amend, leaves these deficient claims and the allegations relating thereto—which the Court has

already concluded fail to state a claim upon which relief can be granted—almost entirely

unchanged.  *Compare* First Am. Compl. ¶¶ 24–44, 45–62 *with* Dkt. No. 17-2 ¶¶ 27–48, 49–67.

Pressreader has also met its burden of establishing that amendment to add the additional state law claims that Hollander pleads in the proposed Second Amended Complaint— defamation, injurious falsehood, and negligence—would be futile.

Amendment of Hollander's First Amended Complaint to add a defamation claim would be futile because, among other reasons, he fails to allege in the proposed Second Amended Complaint a defamatory statement that *concerns* him.  "Defamation in word or print is cognizable in an action for libel."  *Rosenberg v. Metlife, Inc.,* 453 F.3d 122, 123 n. 1 (2d Cir. 2006) (citing *Celle v. Filipino Reporter Enters.,* 209 F.3d 163, 176 (2d Cir.2000)).  "Under New York [State] law, libel consists of five elements: (1) 'a written defamatory statement of fact concerning the plaintiff'; (2) 'publication to a third party'; (3) 'fault (either negligence or actual malice depending on the status of the libeled party)'; (4) 'falsity of the defamatory statement'; and (5) 'special damages or per se actionability (defamatory on its face).'"  *Id.* (citing *Celle,* 209 F.3d at 176).  The proposed Second Amended Complaint fails to adequately allege at least the first of these elements because none of the statements it identifies as defamatory actually reference Hollander.  *Compare* Dkt. No. 17-2 ¶ 70 *with* Dkt. No. 1-3 at 14–15.  Rather, Hollander is referenced *only* in the first sentence of the article—a sentence that he *does not* challenge as defamatory in his proposed Second Amended Complaint—and nowhere else.  The alleged defamatory statements he *does* identify in the proposed Second Amended Complaint, *see* Dkt. No. 17-2 ¶ 70, are cherry-picked from other parts of the article that do not reference him.

Amendment of Hollander's First Amended Complaint to add an injurious falsehood claim would also be futile.  "Injurious falsehood 'requires the knowing publication of false and derogatory facts about the plaintiff[']s business of a kind calculated to prevent others from

dealing with the plaintiff, to [his] demonstrable detriment.'"  *In Touch Concepts, Inc. v. Cellco P'ship*, 949 F. Supp. 2d 447, 483 (S.D.N.Y. 2013) (quoting *Banco Popular N. Am. v. Lieberman*, 75 A.D.3d 460, 462 (1st Dep't 2010)).  Injurious falsehood is distinct from defamation in that while "injurious falsehood is 'confined to denigrating the quality of the [plaintiff's] business'[s] goods or services,'" "defamation involves 'impugn[ing] the basic integrity or creditworthiness of a business.'"  *Id.* at 483.  Here, the Second Amended Complaint fails to allege any statements relating to the quality of the services Hollander's law practice or business consultancy provides; rather, what it alleges as an injurious falsehood claim is, in fact, a restated defamation claim. Allowing amendment to add such a claim would thus be futile for two reasons: not only is such a claim duplicative of Hollander's defamation claim, but it also fails to adequately allege the elements of defamation for the reasons already articulated above.  *See Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 149 (E.D.N.Y. 2010) (dismissing an injurious falsehood claim as duplicative of libel claim); *O'Brien v. Alexander*, 898 F.Supp. 162, 172 (S.D.N.Y. 1995) (dismissing injurious falsehood claim as duplicative of defamation claim).  Furthermore, the Second Amended Complaint does not "allege special damages 'with the requisite specificity'"— or at all—as is required "to proceed on an injurious falsehood claim."  *Conte*, 703 F. Supp. 2d at 149.

Finally, even if Hollander were able to state an ordinary negligence claim under these circumstances—a questionable proposition under New York law, *see Virelli v. Goodson-Todman Enterprises, Ltd.,* 142 A.D.2d 479, 487 (1989)—allowing amendment of his First Amended Complaint to add a negligence claim would be futile because, as discussed above, he has failed

to identify any false statements included in the April 2018 article that could constitute a breach

of any duty of care owed to him.

In light of the foregoing, the Court concludes that amendment of Hollander's First

Amended Complaint would be futile.  The Court believes that any additional effort to replead

would also be futile, because there is no indication that Hollander could state any valid claims

against Pressreader were he to again amend his pleading.  However, if Hollander believes he can

amend his First Amended Complaint to state valid claims, he may file a letter motion and

proposed Second Amended Complaint on or before **July 10, 2020.**

For the foregoing reasons, Hollander's motion for leave to amend is DENIED without

prejudice.

## IV.    SANCTIONS MOTIONS

The Court finally considers two sanctions motions filed by Hollander that remain

pending.  Though Pressreader has not yet responded to these sanctions motions, *see* Dkt. No. 32

(staying briefing on sanctions motions pending outcomes of motions to dismiss and for leave to

amend), the Court now DENIES these meritless motions for the following reasons.

Hollander's first sanctions motion, Dkt. No. 25, is made pursuant to Rule 11 of the

Federal Rules of Civil Procedure and is premised on Pressreader's conduct in (i) removing this

action to federal court in accordance with 28 U.S.C. § 1446 after Hollander amended his

complaint in state court to add a federal RICO claim; (ii) "making a motion for sanctions," Dkt.

No. 26 at 2, in accordance with Rule 11(c)(2)—that is, serving (but not filing) a motion asserting

that the claims set forth in the First Amended Complaint are frivolous; and (iii) mentioning that

sanctions motion in Pressreader's March 12, 2019 letter to the Court, which sought an extension

14

of time to respond to the First Amended Complaint "to allow Rule 11's 21-day 'safe harbor'

period to expire," Dkt. No. 6 at 2.

"Rule 11 'explicitly and unambiguously imposes an affirmative duty on each attorney to

conduct a reasonable inquiry into the viability of a pleading before it is signed.'" *Continental*

*Casualty Company v. Marshall Granger & Company, LLP,* No. 11-cv-3979 (CS), 2017 WL

1901969, at *6 (S.D.N.Y. May 9, 2017) (quoting *Gutierrez v. Fox,* 141 F.3d 425, 427 (2d Cir.

1998)). "Sanctions may be—but need not be—imposed when court filings are used for an

'improper purpose,' or when claims are not supported by existing law, lack evidentiary support,

or are otherwise frivolous." *Ipcon Collections LLC v. Costco Wholesale Corp.,* 698 F.3d 58, 63

(2d Cir. 2012).

Hollander's Rule 11 sanctions motion fails because, among other reasons, he does not

explicitly link his arguments regarding sanctionable conduct to any "pleading, written motion,

[or] other paper" that has been "sign[ed], fil[ed], submit[ed], or . . . advocat[ed]" to the Court.

Even the most generous reading of this motion connects his arguments to only the removal

petition and the Rule 11 motion that Pressreader served on Hollander but did not file with the

Court, neither of which can form the basis of a proper Rule 11 sanctions motion.  Hollander does

not—and, indeed cannot—argue that filing of the removal petition was made for an improper

purpose, was not supported by existing law, or was otherwise frivolous.  If Hollander wished to

oppose removal of this case to this Court, he should have filed a motion to remand.  (And if he

wished to *prevent* it, he should not have amended his complaint to include a claim arising under

federal law.)  Furthermore, the Rule 11 motion that Pressreader served on Hollander but did not

file with this Court plainly falls outside Rule 11, because it was not signed, filed, submitted, or

advocated to the Court, and Pressreader's mere mention of this motion in a letter request seeking

15

an extension of time to respond to the First Amended Complaint does not bring it within the

Rule's purview.  Accordingly, Hollander's Rule 11 sanctions motion is DENIED.

The second motion, Dkt. No. 30, is made pursuant to 28 U.S.C. § 1927 and the Court's

inherent power and is premised on Pressreader's conduct in serving (but not filing) a revised

sanctions motion on April 26, 2019, apparently addressed to Hollander's proposed Second

Amended Complaint, Dkt. No. 17-2, under cover of an email stating that the motion would not

be filed if within 21 days Hollander withdrew his motion, Dkt. No. 17, for leave to file that

Second Amended Complaint, *see* Dkt. No. 31 at 1–4; Dkt. No. 31-2 at 2.

To impose sanctions under either § 1927 or the Court's inherent powers, the Court "must

find clear evidence that (1) the offending party's claims were entirely meritless and (2) the party

acted for improper purposes." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000)

(quoting *Agee v. Paramount Communications Inc.,* 114 F.3d 395, 398 (2d Cir. 1997)).  The

attorney's "bad faith" is a key inquiry when determining whether to award sanctions.  *Id.*

Hollander's sanctions motion made pursuant to § 1927 and the Court's inherent power

fails because there is no evidence—let alone clear evidence—that Pressreader acted in bad faith

in serving Plaintiff with a revised sanctions motion and stating that it would not file the motion

if, within 21 days, Hollander withdrew the pleading that was the subject of motion: the motion

for leave to file the Second Amended Complaint.  What Hollander characterizes as sanctionable

coercion in violation of New York Penal Law, *see* Dkt. No. 31 at 2, is, in fact, *compliance with

Rule 11*.  *See* Fed. R. Civ. P. 11(c)(2) ("The [Rule 11] motion must be served under Rule 5, but it

must not be filed or be presented to the court if the challenged paper, claim, defense, contention,

or denial is withdrawn or appropriately corrected within 21 days after service or within another

time the court sets.").  And Pressreader's *compliance with Rule 11* cannot constitute bad faith.

16

Accordingly, Hollander's motion for sanctions pursuant to § 1927 and the Court's inherent power is also DENIED.

## V.     CONCLUSION

For the foregoing reasons, Pressreader's motion to dismiss Hollander's First Amended Complaint is GRANTED.  Hollander's motion for leave to amend his First Amended Complaint is DENIED without prejudice.  If Hollander seeks to file a Second Amended Complaint, he shall file a letter motion and proposed Second Amended Complaint as described above on or before **July 10, 2020**.  If he does not file such a letter motion—or provide good cause for an extension of time to file such a letter motion—by that date, this case will be dismissed with prejudice at that time.  Hollander's motions for sanctions are DENIED.

This resolves Dkt. Nos. 17, 25, 27, and 30.

SO ORDERED.

Dated: May 30, 2020
       New York, New York

_____
ALISON J. NATHAN
United States District Judge

17